Georgetown.
Heard before Chancellor Desaussure.
The drawer of a marriage settlement, who swears that he drew the deed according to the instructions he received, shall not be allowed to prove that the object or intention of the deed is different from that which appears on its face: there being no allegation of fraud.
. John Murray and John Hughs joined in the execution of the said deed, as third parties 5 but they are not *210 called trastees in the deed. The intended marriage took effect, and the complainant is the only issue. James Dupree the father died first. The mother afterwards married the defendant, who claims the negroes. Previous to her second marriage she made and executed a deed, by'which, she (with the privity stnd consent of her intended second husband) gave part of the negroes in question, and their issue, (nearly half) to complainant.-'
FEB’Y, 1812.
The defendant docs not contest any of the facts stated ‘, but denies that any parol proof is admissible to shew any mistake in drawing the deed.
At the trial the complainant offered in evidence the examination of John Murray* who is one of the parties to the deed, which had boon taken, .subject to the determination of the court as to its admissibility. The admission of this testimony was objected to by the defendant. I admitted it to be read for information, but without prejudice.
The first question which arises in this case is, whether the court can resort to the testimony of Mr. John Murray, to prove that the deed is imperfect, and that by mistake an important clause wag ^ omitted, making more distinct and clear provision for the issue of the marriage, than appears to have bcen done by the deed as it now stands. Í will not go into an examination of the decided cases on this subject. It cannot bo dissembled that they are somewhat at variance with each other. At times, the apparent imperfection of the deed, and the strong desire of the court to get at the whole justice of the case has prevailed, and the parol evidence has been admitted : at other times the great apprehension of the danger of admitting parol evidence to control or vary a formal deed has operated to prevent its admission. In the conflict of these opposing principles, it is not to be wondered, that some inconsistency appears in the cases.
Even the great distinction of ambiguitas latens, ia which parol evidence has been more freely received, and of ambiguitas patens, in which it has been mere cautiously received, has not been sufficient to guide the minds of the judges with unerring correctness : some of the later cases shew that there is a middle ground, furnishing circumstances of extreme difficulty.
In this dilemma we- must resort to principles. The great rule is, that parol evidence shall not be introduced to alter or vary a written deed formally drawn. This was the rule even at common law, before the statute of frauds. The great exce.p1 ion to that rule is, that if from any fraud, mistake, or want of skill, the meaning and intention of the parties has not been properly expressed, but in realit}’ has been changed, justice requires that pa-rol evidence should be admitted to correct Í ho error, so as to attain the veal object of th' * -ardes. But it is obvious that the application of tins exception requires the utmost delicacy and caution, or men's wills and agreements would be in the greatest danger of being overthrown, or *212 varied by false testimony. Among the cautions requ.v site, 1 apprehend it should appear pretty plainly to have been an error which requires to be rectified. Another is, that the attempt to vary, or alter, or add to the deed ou the^ gronn(i 0p mistake, should be made in a reasonable time whilst the parties or seme of them are living ,• and that the witness should speak from some minutes or memorandum preserved.; or if he is admitted to speak from memory, (which should be done with infinite caution,) then lie should speak with great clearness, and particularity to the exact point in which the error consists : not in general terms.
In the case under consideration, the parol evidence offered is that of Mr. John Murray ; who is said to have drawn the deed ; and I have no doubt hut that his testimony would he fair and full to the best of his recollection. But when I reflect that all the parties originally interested arc dead, and that there is no evidence that they were ever dissatisfied with the deed — -and that it is not alleged or pretended that Mr. Murray kept any memorandum of the instructions given him, and that he is now called upon after a lapse of twenty-five years, to speak merely from his recollection, to add to or vary a formal deed, and that too in the case of an ambigmlas patens, I do not feel thatl should be justified in admitting this parol evidence, it might promote the purposes of justice in this particular’ case, but it would open the door for the admission of parol evidence still wider than it is; and I think it is already wide enough.
We must then consider the deed itself, and endeavor to give it such construction as its terms and the authority of the decided cases will warrant. On examining the deed in question, it is obvious to every discerning eye, that it is ill drawn, and hears the marks of an unskilful hand. Two persons join in the deed as parties, who had no interest, John Murray and John Hughs. They were certainly meant to be trustees if there was any meaning at all; yet they are no wjfiere called so through the deed: they are men of straw, put up apparently without object. The deed bears many other marks of being drawn by a *213 wan unacquainted with such matters. It is not then to be wondered that it appears imperfect.
There is bat one case i-eally provided for in the deed, 'in case of issue, if taken literally, and that is the case of the wife dying before her husband leaving issue of her body. In that case, upon tbo death of the husband, (who surviving her was to have a life estate) the negroes were to go to that issue. In default of such issue the property is to go over to others — no express provision is made for the case of her surviving her husband, and then dying leaving issue. There is such a disposition manifested to keep the property in the family, not only by providing for the issue in the specified case, but for re-, mote relations, that one cannot help being irresistably drawn to the opinion that there was a mistake, and an omission of an intended provision for another contingency, to wit, the case of her surviving her husband, ami then dying leaving issue. The evidentia rei, seems to furnish this presumption violently. In such cases the court will go great lengths to get at the intention and give effect to the deed. In the case of Kinlisli vs. Newman, 1 P. "Williams, 235, the court supplied the words, “ if the wife should die without issue,” to prevent the. estate going from her issue to others, which a literal adherence to the deed would have, produced. In the case of ■White and Barber, reported in 5 Burrows, the court of King’s Bench, on an issue out of chancery, construed the words which provided for the child or children of whom, the testator’s wife might be ensient at his death, so as to protect and provide for children born after the making' of the will, and before the testator’s death, and the chancellor approved the construction.
So in this case, I am strongly inclined to think that tiie words, <s but by default of such issue,” which are in the third clause, need not be taken with reference to the particular provisions of the preceding-clause, to wit, the case of the wife dying before the husband ; but as a substantive, distinct clause, providing generally for the failure of issue of the body of Sarah Johnson, tobe begotten by James Dupree-, and by such construction, the itpsue- would take, and the complainant would recover.
*214 But it is objected, that even if such construction could be given to the clause, the limitation would be too And void. I am not, however, of that opinion; It is true, that generally, the'words “ heirs of the boa,.e wor<js 0f limitation but they may be and ara qualified by the use of other words. For the words which follow are, t( But by default of such issue,” and the word “ issue” is generally neuter, and may he considered words of limitation, or of purchase, as other words and the intent of the parties and the justice of the case may require. Under the circumstances of this case, I am of opinion there are words enough to' shew that this should be construed words of purchase, aud vest the estate in the issue. Blit let us suppose this to be a case of limitations' — then, according to the rule, it would vest the estate in the first taker, to wit, the first husband :■ — • and we shall see presently how this would affect the case.
There is however, another objection; it is, that there is .really no ground for construction in this case. That the omission to provide for the case of the wife's .surviving the husband, was a prudential and designed omission, intended, in such case to restore all the property to its original state, and to revest it, unincumbered with any limitations, in Mrs. Sarah Dupree, to whom it originally belonged. I admit that it is possible and that it might have been contemplated by the parties. But I can know this only by conjecture. There is no express provision to that effect, nor any thing on the face of the deed to shew such intention. But the counsel for defendant say there was no occasion for such provision. That the. limitations provided for not taking effect, the property returned of course to the wife, the first owner, as the deed was functus officio. This however, appears to mo not to he the case. The deed gives the property to the husband absolutely ; — then follow certain limitations, If the events provided for by them have never occurred, there is nothing to prevent the first provision by which it was given to the husband James Dupree, from taking effect. If then, the property remained in him, how do the rights stand Í Oa his death intestate, hia widow was entitled to- *215 a third oí those negroes, as well as of the rest of his estate, and his son the complainant to two thirds. She has since convoyed one half of the negroes, which was more than her share, to her son the complainant. Thus, it appears to me, that in any point of view, the complainant is entitled.
It is therefore ordered and decreed, that the defendant do account before the commissioner for the hire and labor of the negroes, from the first day of January, subsequent to tho death of the late Mrs. M1'Donald — > that being the time fixed upon by tho consent of the -parties, expressed to the court.
The haste, however, in which we are obliged to try and decide upon the cases, and the intrinsic difficulties of5 this case, would make me regret if the parties should not carry up this case for revision to a higher tribunal, should they have any doubts of the corre etness of the decision.
There was no appeal from this decree.